IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**EDGAR LOPEZ, and IMA, Inc.,**

    **Plaintiffs,**

v.                                                                           No. 10cv0882 JCH/GBW

**EDWARD F. KILLIAN and
JEANIE KILLIAN, as Co-Trustees
of the EDWARD F. KILLIAN
LIVING TRUST; and VICKI HUNT,
as TRUSTEE OF THE JACK R. HUNT,
LIVING TRUST and as EXECUTOR OF THE
ESTATE OF JACK R. HUNT,**

    **Defendants.**

**MEMORANDUM OPINION AND ORDER
and ORDER TO SHOW CAUSE**

This matter is before the Court on *Defendants' Motion To Dismiss for Lack of Personal Jurisdiction and Improper Venue*, filed May 25, 2011 [Doc. 21]. The Court permitted the Plaintiffs' attorney to withdraw from this case on June 27, 2011, and gave the Plaintiffs an additional thirty days to respond to the motion, but they have not responded. *See* Doc. 25 at 2. After reviewing the Complaint, the motion to dismiss, the memorandum in support (together with its attachments), and the relevant law, the Court concludes that the motion should not be granted, but that the Plaintiffs should show cause why this case should not be dismissed for their failure to prosecute.

**DISCUSSION**

**I. LEGAL STANDARDS**

    **A. Personal Jurisdiction**

Where a federal lawsuit is based on diversity of citizenship, the court's personal jurisdiction over a nonresident defendant is determined by the law of the forum state. *See* Fed.R.Civ.P. 4(e). The party seeking to establish personal jurisdiction over a foreign litigant must make two showings: first, that the exercise

of jurisdiction is sanctioned by the state's long-arm statute; and second, that it comports with the due process requirements of the Fourteenth Amendment.

*Marcus Food Co. v. DiPanfilo*, No. 10-3285, ___ F.3d ___, ___, 2011 WL 5084997 at *3 (10th Cir. Oct. 27, 2011). New Mexico's long-arm "statute extends the jurisdictional reach of New Mexico courts as far as constitutionally permissible." *Tercero v. Roman Catholic Diocese of Norwich, Conn.*, 132 N.M. 312, 315, 48 P.3d 50, 54 (2002). Thus, the court "need not conduct a statutory analysis apart from the due process analysis." *Marcus Food Co.*, ___ F.3d at ___, 2011 WL 5084997 at *3 (internal quotation marks omitted).

> The plaintiff bears the burden of establishing personal jurisdiction, but where, as here, the issue is raised early on in litigation, based on pleadings (with attachments) and affidavits, that burden can be met by a *prima facie* showing. [The Court accepts] as true all well-pled (that is, plausible, non-conclusory, and non-speculative) facts alleged in plaintiff's complaint [] . . . [and] resolve[s] any factual disputes in the plaintiff's favor.
>
> . . . .To exercise jurisdiction in harmony with due process, defendants must have 'minimum contacts' with the forum state, such that having to defend a lawsuit there would not 'offend traditional notions of fair play and substantial justice.' Such contacts may give rise to personal jurisdiction over a non-resident defendant either generally, for any lawsuit, or specifically, solely for lawsuits arising out of particular forum-related activities:
>
>> General jurisdiction is based on an out-of-state defendant's 'continuous and systematic' contacts with the forum state, and does not require that the claim be related to those contacts. Specific jurisdiction, on the other hand, is premised on something of a quid pro quo: in exchange for 'benefitting' from some purposive conduct directed at the forum state, a party is deemed to consent to the exercise of jurisdiction for claims related to those contacts.

*Shrader v. Biddinger*, 633 F.3d 1235, 1239 (10th Cir. 2011) (quoting *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063, 1078 (10th Cir. 2008)) (additional internal quotation marks, citations, and brackets omitted).

In contrast to the single, overarching requirement of continuous and systematic contacts for general jurisdiction, the "minimum contacts" test for specific

> jurisdiction encompasses two distinct requirements:  first, that the out-of-state defendant must have 'purposefully directed' its activities at residents of the forum state, and second, that the plaintiff's injuries must 'arise out of' defendant's forum-related activities. . . . . [E]ven if the "purposeful direction" and "arising out of" conditions for specific jurisdiction are met, that is not the end of the matter.  We must still inquire whether the exercise of personal jurisdiction would offend traditional notions of fair play and substantial justice.

*Id.* (internal quotation marks and citations omitted).  Once minimum contacts have been satisfied, however, the burden shifts to the defendant to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Dudnikov*, 514 F.3d at 1080.  The factors traditionally used to consider "whether the exercise of personal jurisdiction [over a non-resident defendant] would 'offend traditional notions of fair play and substantial justice'" are:

> (1) the burden on the defendant, (2) the forum state's interests in resolving the dispute, (3) the plaintiff's interest in receiving convenient and effectual relief, (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and (5) the shared interest of the several states . . . in furthering fundamental social policies.

*Id.* (internal quotation marks omitted); *see ClearOne Commc'ns, Inc. v. Bowers*, 643 F.3d 735, 763 (10th Cir. 2011) (affirming denial of motion to dismiss because defendant made "no attempt in his motion to dismiss to discuss any of these five factors, nor does he on appeal.  Necessarily, then, he failed to carry his burden of presenting a compelling case that the district court's exercise of personal jurisdiction over him would be unreasonable.").

**B. Venue**.

Under the statute in effect at the time Plaintiffs filed their Complaint[1], venue in a diversity case was proper in:

---

[1] Congress amended 28 U.S.C. § 1391, effective January 6, 2012.  *See* Title II of Pub.L. 112-63 § 205 (providing that the amendments take effect upon the expiration of the 30 day period beginning on Dec. 7, 2011, and apply to actions commenced on or after such effective date and actions removed from State courts that had been commenced on or after such effective date.

> (1) a judicial district where any defendant resides, if all defendants reside in the same State; (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or (3) a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(a) (2002).

> Venue . . . does not involve the power or authority to adjudicate a controversy. It relates solely to the place where jurisdiction should or may be exercised. *Olberding v. Illinois Central R. Co.*, 346 U.S. 338, 340, 74 S. Ct. 83, 98 L. Ed. 39 (1953). Venue is a forum limitation imposed for the convenience of the parties. As a concept of convenience rather than of jurisdiction, it may be conferred on a court either by consent or by the failure of the defendant to make a timely objection.

*United States ex rel. Rudick v. Laird*, 412 F.2d 16, 20 (2d Cir. 1969); *see Jones v. KP&H LLC*, No. 07-3246, 288 Fed. App'x 464, 471, 2008 WL 2805444, *6 (10th Cir. July 22, 2008) ("'Venue is not a substantive right, but is a procedural matter designed for the convenience of the litigants,' 77 Am. Jur. 2d Venue § 1.").

When reviewing a challenge to venue under § 1391(a)(2), the court should first "examine the nature of the plaintiff's claims and the acts or omissions underlying those claims." *Employers Mut. Cas. Co. v. Bartile Roofs, Inc.*, 618 F.3d 1153, 1166 (10th Cir. 2010). After determining the nature of the claims, the court

> determine[s] whether substantial events material to those claims occurred in the forum district. The substantiality requirement is satisfied upon a showing of acts and omissions that have a close nexus to the alleged claims. *Jenkins Brick Co.*, 321 F.3d at 1372; *Uffner*, 244 F.3d at 42 ("We look ... not to a single triggering event prompting the action, but to the entire sequence of events underlying the claim."); *see also* 17 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE § 110.04[1] (3d ed. 2010) (stating that, when engaging in the substantiality analysis, courts "ought not focus solely on the matters that gave rise to the filing of the action, but rather should look at the entire progression of the underlying claim").

*Id.* But "venue is not limited to the district with the *most* substantial events or omissions." *Id.* at 1165.

4

## II.     UNDISPUTED FACTS.

The Defendants have filed no affidavits regarding their contacts with New Mexico or the events in this case. Instead, they rely solely on the allegations in the complaint to challenge personal jurisdiction and venue[2]. The facts, viewed in the light most favorable to the Plaintiffs, are as follows. Plaintiff Edgar Lopez is a New Mexico resident. Compl. at 1, ¶ 1. Lopez owns and operates Plaintiff IMA, LLC, a New Mexico limited liability corporation that formerly managed the Perry Corners Shopping Center. *See id.* at 1, ¶ 2; *id.* at 5, ¶ 28. Defendants Edward and Jeanie Killian and the Edward F. Killian Living Trust are residents of Nevada. *See* Compl. at 1, ¶¶ 3, 4; Doc. 22 at 2, ¶ 3. Defendant Vicki Hunt and the Jack R. Hunt Living Trust are residents of Kansas. Compl. at 2, ¶ 5; Doc. 22 at 2, ¶ 3. Lopez is the managing partner and the only surviving voting member of Hunt Partners, LLC, a Nevada corporation that has its principal place of business in New Mexico. *Id.* at 2, ¶ 6; *id.* at 3, ¶ 16; Doc. 22 at 1, ¶ 2. Jack R. Hunt, who is now deceased, was the only other partner and voting member in Hunt Partners, LLC, but Defendant Edward F. Killiam invested money in Hunt Partners and has an equitable interest in its holdings. Compl. at 2, ¶¶ 6, 9. Hunt Partners wholly owns, as the "sole equity member," another LLC called "Perry Corners Shopping Center, LLC," a Delaware Corporation with its principal place of business in New Mexico, which, in turn, owns as its only asset the Perry Corners Shopping Center, which is located in Georgia. Compl. at 2, ¶ 12; *id.* 3, ¶¶ 15, 20; *id.* at 4, ¶ 24; Doc. 22, Ex. A at 1. Lopez is the only "special member" of Perry Corners Shopping Center, LLC, and serves as its President and CEO with

---

[2] Defendants attach a copy of the agreement creating Perry Corners Shopping Center, LLC by Hunt Partners LLC and Lopez; a list of Perry Corners Shopping Center, LLC's members; Perry Corners Shopping Center, LLC's certificate of Good Standing as a Delaware Corporation; and a certificate of authority for Perry Corners Shopping Center, LLC to transact business in Georgia. *See* Doc. 23, Exs. A-D.

responsibility for its "general and active management," and also served as its Treasurer. *See* Doc. 22, Ex. A at 1, 6; *id.* Ex. C.

To support the exercise of venue in this District, the Complaint alleges that "the parties have transacted business in New Mexico." Compl. at 3, ¶ 15. Defendants have presented nothing to rebut this allegation, thus it must be accepted as true. In addition, the Complaint alleges that Defendants Edward Killian and Vicki Hunt illegally, and in violation of the Plaintiffs' contracts, have taken over control of the Perry Corners Shopping Center LLC, and that they "have replaced [IMA] with a property manager of their choosing." *Id.* at 5, ¶¶ 27-31. The Complaint also alleges venue in this District because the control of Perry Corners Shopping Center, LLC "is the subject of this litigation." *Id.* at 3, ¶ 15.

### III.   ANALYSIS.

**A. The Plaintiffs have made a prima facie showing of minimum contacts that satisfy due process.**

Although the Complaint alleges only a count for Breach of Contract, *see* Compl. at 5, it seems clear that none of the Defendants are parties to the contracts at issue, and the Complaint actually requests damages for tortious interference with Lopez's and IMA's contractual relations. The Complaint alleges that the Defendants are causing "irreparable injury" by illegally interfering with Lopez's control over Perry Corners Shopping Center, LLC and by illegally replacing IMA's business contract with another contract. *See* Compl. at 6, ¶ 34.

It is well settled that a tortious act may be considered "purposefully directed" at a resident of a forum state when "alleged injuries arise out of [a defendant's] New Mexico-related activities." *Silver v. Brown*, 382 Fed. App'x 723, 728-30, 2010 WL 2354123, *4-*6 (10th Cir. June 14, 2010) (holding that posting on the internet a derogatory blog that was intended to negatively affect a New

Mexico business provided sufficient minimum contacts to satisfy due process because, "'[i]n judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation,'" including where the "brunt of the injury" will be felt) (quoting *Calder v. Jones*, 465 U.S. 783, 788 (1984)). Thus, if a complaint alleges "intentional, and allegedly tortious, actions [that] were expressly aimed at [the forum state,]" the defendant "must reasonably anticipate being haled into court there to answer for" those actions because "[a]n individual injured in California need not go to Florida to seek redress from persons who, though remaining in Florida, knowingly cause the injury in California." *Calder*, 465 U.S. at 790 (internal quotation marks omitted). In *Silver*, the Tenth Circuit positively cited a Seventh-Circuit case in which the Court held that there were sufficient minimum contacts for personal jurisdiction when out-of-state defendants tortiously interfered with a plaintiff's forum-state "existing contracts and prospective economic advantage" by their out-of-state actions. *See Silver*, 382 Fed. Appx. at 731 (analyzing *Tamburo v. Dworkin*, 601 F.3d 693 (7th Cir. 2010)).

Here, the Complaint alleges that the Defendants purposefully and tortiously interfered with Lopez's and IMA's contractual relations, which have caused harm to them in New Mexico. Such allegations demonstrate that Defendants' actions were aimed at New Mexico because they knew that the Plaintiffs are New Mexico residents who conduct their business here. The Court concludes that the Complaint alleges facts on which to find sufficient minimum contacts to satisfy due process. Because the Defendants have failed to meet their burden to "present a compelling case that the presence of some other considerations would render jurisdiction unreasonable," *Dudnikov*, 514 F.3d at 1080, the Court will deny the motion to dismiss based on lack of personal jurisdiction.

**B. The Plaintiffs alleged facts to support venue in this District.**

In support of their motion to dismiss for improper venue, the Defendants state only that

"[t]he Complaint alleges that the Defendants took actions in breach of the LLC Agreement. The Complaint does not state that the alleged actions took place in New Mexico." Doc. 22 at 5. The Defendants also refer to some litigation in Nevada involving Mr. Killiam, but that litigation clearly is not the basis for the Plaintiffs' tort suit in this Court. The Defendants ignore the allegations that "the parties have transacted business in New Mexico," Compl. at 3, ¶ 15, and that Defendants Edward Killian and Vicki Hunt took over control of the Perry Corners Shopping Center LLC, which has its principal place of business in New Mexico, and replaced IMA, a New Mexico limited liability corporation, "with a property manager of their choosing," *id.* at 5, ¶¶ 27-31. The Court has not found a published Tenth Circuit case analyzing who bears the burden on a motion to dismiss for improper venue. The Third Circuit, however, has addressed the issue, and its analysis is compelling.

> . . . . [A] motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense. Because of the nature of the motion, "it is not necessary [as contrasted with jurisdiction] for the plaintiff to include allegations showing the venue to be proper." Fed. R. Civ. P. Form 2, Advisory Committee note 3. It logically follows therefore that on a motion for dismissal for improper venue under Rule 12 the movant has the burden of proving the affirmative defense asserted by it. *United Rubber, Cork, Linoleum & Plastic Workers v. Lee Rubber & Tire Corp.*, 269 F. Supp. 708, 715 (D.N.J. 1967), *aff'd*, 394 F.2d 362 (3d Cir.), *cert. denied*, 393 U.S. 835, 89 S. Ct. 108, 21 L. Ed. 2d 105 (1968). In dissenting, Judge Garth asserts, however, that when a venue objection is raised by the defendant, the plaintiff has the burden to establish proper venue. Although he cites cases to support this view, these cases confuse jurisdiction with venue or offer no reasons to support their position. *Aro Manufacturing Co. v. Automobile Body Research Corp.*, 352 F.2d 400 (1st Cir. 1965), *cert. denied*, 383 U.S. 947, 86 S. Ct. 1199, 16 L. Ed. 2d 210 (1966), relied on in the dissent, is a case involving territorial jurisdiction and not venue. Cases that hold the burden of establishing venue is upon the plaintiff reach this result without distinguishing between jurisdiction and venue. We agree with Professor Moore that this view is "unsound" and the defendant should ordinarily bear the burden of showing improper venue in connection with a motion to dismiss. *See* 1 J. Moore, Moore's Federal Practice ¶ 0.140[1], at 1319-20 (2d ed.1982).

*Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724–25 (3d Cir. 1982); *Great Western Min. & Mineral Co. v. ADR Options, Inc.*, No. 10-3142, 434 Fed. App'x 83, 86 (3rd Cir. June 28, 2011) (citing

8

*Myers*; noting that, "[b]ecause improper venue is an affirmative defense, the burden of proving lack of proper venue remains—at all times—with the defendant;" and holding that the defendant "failed to satisfy its burden of showing that venue was improper in the District of New Jersey, and the District Court erred in dismissing [the plaintiff's] amended complaint on that basis").

As noted, Lopez seeks a declaratory judgment that he has the sole right to control the management of Perry Corners Shopping Center, LLC, which he operates in New Mexico and which control has been usurped by the Defendants. IMA, a New Mexico Limited Liability Corporation that also conducts its management business in New Mexico, seeks damages for interference with its management contract for the Shopping Center. As noted, *supra,* the brunt of the injury in this case will be suffered by a New Mexico resident and his New Mexico business, and involves interference with contracts and agreements apparently signed by Lopez and Hunt Partners, LLC in New Mexico. The Court is satisfied that the Defendants' allegedly tortious acts effectively occurred in New Mexico because they have "a close nexus to the alleged claims," *Emp'rs Mut. Cas. Co.*, 618 F.3d at 1166, and that venue is therefore proper in this District.

But if venue is not proper in this District under § 1391(a)(2), because the Court has already determined that it has personal jurisdiction over the Defendants, venue is proper under § 1391(a)(3), which provides that a diversity case may be brought in "a judicial district in which any defendant is subject to personal jurisdiction at the time the action is commenced, if there is no district in which the action may otherwise be brought."

## IV. FAILURE TO PROSECUTE.

The Court is concerned, however, that the Plaintiffs have done nothing to move their case forward since it was filed in September 2010. The Plaintiffs, through their attorney, first notified the Court that a global settlement had been reached with Defendant Vicki Hunt on December 30,

2010. *See* Doc. 9. At subsequent status conferences, the parties informed the Court that, because of the complexity of the settlements, which involved more shopping centers, the settlement still had not been finalized. *See* Docs. 12 (minutes of February 16, 2011 status conference); Doc. 16 (minutes of March 29, 2011 status conference). Defendants' attorney informed the Court on May 25, 2011 that, after another settlement conference, the parties still had not completed the settlement documents; that Lopez and his attorney had left to attend a bankruptcy hearing[3]; and that he would file an answer in this case. *See* Doc. 20. Plaintiffs have not obtained an attorney to represent them in this case since their attorney withdrew in June 2011.

Magistrate Judge Wormuth set a third, telephonic, status conference for February 28, 2012. In his Order, Judge Wormuth warned Plaintiffs that:

> The Court may dismiss a case if a plaintiff fails to prosecute or comply with a court order. Fed. R. Civ. P. 41(b). It appears to the Court that Plaintiffs have failed to prosecute the case and to comply with the Court's order to respond to Defendants' Motion to Dismiss. The Court will hold a telephonic status conference to give Plaintiffs an opportunity to explain these apparent failures. . . . Failure to attend may constitute an independent basis for dismissal.

Doc. 27 at 2. Plaintiffs failed to attend the status conference. *See* Doc. 28 (minutes of February 28, 2012 status conference).

This Court has the power to *sua sponte* dismiss a case for failure to prosecute. *See Link v. Wabash R.R. Co.*, 370 U.S. 626, 630-31 (1962). "The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts." *Id*. at 629-30. The Court's authority is an inherent power "governed not by rule or statute but by the control necessarily vested in courts to manage their own

---

[3] No party has informed the Court that any party has filed for bankruptcy proceedings or that this case is subject to an automatic stay.

affairs so as to achieve the orderly and expeditious disposition of cases." *Id*. at 630-31. The Court will give Plaintiffs a final opportunity to show cause in writing why their cause of action should not be dismissed for failure to prosecute. If the Plaintiffs fail to respond to this Order within 14 days of its filing, the Court will dismiss the Complaint with no further notice.

**IT IS ORDERED THAT** the Defendants' *Motion to Dismiss* (Doc. 21) is DENIED; and

**IT IS FURTHER ORDERED THAT** Plaintiffs shall respond to the Court's Order to Show cause by filing a written response within fourteen days of the filing of this Order, or the Complaint will be dismissed without further notice.

_____
UNITED STATES DISTRICT JUDGE